1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

JACKELYN AFFRONTE,

11

Plaintiff,

12

v.

13

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,[1]

14
15

Defendant.

CASE NO. 2:16-CV-01287-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16
17
18
19
20
21
22

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

denial of Plaintiff's applications for Supplemental Security Income ("SSI") benefits. The parties

have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed.

R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

United States Magistrate Judge, Dkt. 5.

23
24

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting
Commissioner of Social Security. Fed. R. Civ. P. 25(d).

ORDER ON PLAINTIFF'S COMPLAINT - 1

1   After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

2   erred by failing to properly evaluate the opinion of Plaintiff's treating psychiatrist. Therefore,

3   this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further

4   proceedings.

5   **<u>PROCEDURAL & FACTUAL HISTORY</u>**

6   On April 30, 2014, Plaintiff filed an application for SSI. *See* Dkt. 9, Administrative

7   Record ("AR") 158-66. Plaintiff alleges she became disabled on August 15, 1994, due to bipolar

8   disorder, asperger's syndrome, cerebral palsy, general anxiety disorder, learning disability,

9   attention deficit-hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD"), and

10   an eating disorder. *See* AR 158, 209.  Plaintiff's application was denied upon initial

11   administrative review and on reconsideration. *See* AR 70, 83. A hearing was held before an ALJ

12   on September 16, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See*

13   AR 29.

14   On January 16, 2015, the ALJ found Plaintiff was not disabled within the meaning of

15   Section 1614(a)(3)(A) of the Social Security Act. AR 24. Plaintiff's request for review of the

16   ALJ's decision was denied by the Appeals Council on June 23, 2016, making that decision the

17   final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20

18   C.F.R. § 404.981, § 416.1481. On July 14, 2015, Plaintiff filed a complaint in this Court seeking

19   judicial review of the Commissioner's final decision.

20   Plaintiff argues the denial of benefits should be reversed and remanded for further

21   proceedings, because: 1) the ALJ erred in evaluating the opinion of Plaintiff's treating

22   psychologist, one examining psychologist, and two non-examining psychological consultants;

23   and 2) the ALJ improperly discounted the lay witness testimony. Dkt. 12, pp. 1-2.

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

1

**STANDARD OF REVIEW**

2        Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3   security benefits only if the ALJ's findings are based on legal error or not supported by

4   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

6   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

7   mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

8   750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

9

**DISCUSSION**

10   I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

11          **A.  Standard**

12        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

13   opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

14   821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

15   *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

16   examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

17   set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

18   *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). The ALJ

19   can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

20   clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

21   F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

22   explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

23   157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant

24

1  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

2  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

3  F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

4  disregarding [such] evidence." *Flores*, 49 F.3d at 571.

5  **B.  Application of Standard**

6  1. *Katerina Riabova, M.D.*

7  Dr. Riabova was Plaintiff's treating psychiatrist from 2007 through the date of the ALJ's

8  decision. *See* AR 372, 401. Dr. Riabova diagnosed Plaintiff with bipolar disorder, Asperger's

9  syndrome, general anxiety disorder, ADHD, OCD, and borderline personality disorder. AR 372.

10  In March of 2013, Dr. Riabova opined Plaintiff's impairments would cause limitations in her

11  ability to: interact socially; understand communications from others; concentrate; learn, follow,

12  and retain instructions; and maintain relationships. AR 372-73. Dr. Riabova opined Plaintiff was

13  incapable of employment. AR 372. Dr. Riabova rendered a supplemental opinion on September

14  26, 2014, where she indicated Plaintiff's limitations are the product of her mental illnesses. AR

15  401. Dr. Riabova further indicated Plaintiff's conditions were nonresponsive to a range of

16  psychotropic medications. AR 401. As a result of Plaintiff's impairments, Dr. Riabova opined

17  Plaintiff would be unable to engage in even unskilled employment, as Plaintiff had marked to

18  severe limitations in her ability to: accept instruction from a supervisor; interact appropriately

19  with coworkers; maintain concentration and work at a productive pace; and maintain a regular

20  schedule without frequent tardiness or absenteeism. AR 401. Though Dr. Riabova opined

21  Plaintiff's prognosis was quite poor, she could not rule out the possibility that at some point in

22  the future she might experience a reduction in her symptoms. AR 401.

23  The ALJ gave little weight to Dr. Riabova's opinions for the following three reasons:

24

1
2
3
4
5
6
7
8

[1] Even though Dr. Riabova has a treating relationship with the claimant, I give only little weight to her opinions because they are inconsistent with other substantial evidence of record, including Dr. Riabova's own treating notes, which documented that the claimant made good eye contact and showed preserved concentration, and that the claimant frequently reported feeling "good" or "fine" [AR 329-33, 359-68]. There is no indication in Dr. Riabova's treatment notes of any social problems. [2] As discussed in detail above, while the claimant has impairments, she managed to live alone, do housework, finish high school, go to the library, use public transportation, hang out with friends, use the internet and watch lots of television shows and movies [AR 258-59, 280-83, 330, 332, 354, 359, 362-63, 365-68].[²] [3] Moreover, Dr. Riabova's opinions are not supported by the claimant's relatively normal performance during the July 2013 mental status examination [AR 355], as discussed in detail above. The treatment notes and independent testing results show that the claimant is less limited than opined by Dr. Riabova in her 2013 and 2014 statements.

9  AR 21-22. Plaintiff argues these were not specific and legitimate reasons for discounting Dr.

10  Riabova's opinions.

11  First, to the extent the ALJ found Dr. Riabova's opinions to be inconsistent with her

12  treatment notes, this finding was unsupported by substantial evidence. While Plaintiff

13  demonstrated good eye contact during Dr. Riabova's examinations, Dr. Riabova also consistently

14  documented constricted affect, immature thought process, poor judgment and insight, and poor

15  memory. AR 330-34, 359-68. While the ALJ found Dr. Riabova's treatment notes did not reflect

16  Plaintiff had any social problems, Dr. Riabova's notes actually document significant social

17  difficulties, including diminished insight and a history of physical assault. AR 334-36. These

18  were significant aspects of Dr. Riabova's treatment notes which lend support to her opinions as

19  to Plaintiff's work-related limitations. The ALJ could not silently disregard them in concluding

20  Dr. Riabova's treatment notes were inconsistent with her opinions. *See Reddick v. Chater*, 157

21

22

23

24

² The ALJ also cites to pages four and five of a January, 2009 letter by Dr. Riabova. AR 21 (referencing Exhibit 8F4-5). However, Exhibit 8F in the record is only one page long. *See* AR 370. It appears the ALJ meant to refer to Exhibit 8E, which contains Plaintiff's Adult Function Report. AR 256-263.

1   F.3d 715, 720 (9th Cir. 1998) (noting the ALJ erred in developing "his evidentiary basis by not

2   fully accounting for the context of materials or all parts of the testimony and reports. His

3   paraphrasing of record material is not entirely accurate regarding the content or tone of the

4   record.").

5          Second, as to Plaintiff's activities of daily living, the ALJ failed to explain how these

6   activities actually contradicted Dr. Riabova's opinions. *See Esparza v. Colvin*, 631 Fed.Appx.

7   460, 462-63 (9th Cir. 2015). An ALJ must do more than state his or her conclusions; he or she

8   must explain why his or her interpretations, rather than those of the doctors, are correct. *Reddick*,

9   157 F.3d at 725. Further, the Ninth Circuit has stated ALJ's should be especially cautious in

10  finding a claimant's activities of daily living contradict claims of disabling limitations, "because

11  impairments that would unquestionably preclude work and all the pressures of a workplace

12  environment will often be consistent with doing more than merely resting in bed all day."

13  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

14         Notably, none of the activities identified by the ALJ are actually inconsistent with Dr.

15  Riabova's opinions. For example, Defendant argues Dr. Riabova's opinions Plaintiff would have

16  difficulty accepting instructions from a supervisor or interacting appropriately with coworkers

17  was inconsistent with the fact Plaintiff "hung out" with her friends. Dkt. 12, p. 3. However, it

18  does not follow from the fact Plaintiff had unspecified interactions with friends, that she would

19  be able to appropriately interact with coworkers, or respond appropriately to supervisor

20  instruction, in a work setting. *See, e.g.*, *Lester v. Colvin*, 2014 WL 2009092, at *2-3 (W.D.

21  Wash. May 16, 2014) (noting a claimant's interaction with his girlfriend and parents were not

22  inconsistent with limitations in interacting with coworkers, supervisors, or authority figures).

23  Also, the ALJ relies on Plaintiff's completion of a high school education, but fails to account for

24

1  the fact Plaintiff was only able to do so under certain conditions. Plaintiff was unable to

2  complete the standard high school curriculum, and was referred to special education services due

3  to deficits in a wide range of areas. AR 308, 311-13. Plaintiff was highly distracted and had

4  inconsistent attendance, even within the context of a special education setting. AR 307. Finally,

5  the ALJ failed to explain how the balance of activities she identified—living alone, doing

6  housework, using public transportation, and watching TV—are actually inconsistent with Dr.

7  Riabova's opined limitations in Plaintiff's ability to interact with coworkers and supervisors,

8  concentrate and work at a production pace, or maintain a regular schedule without absenteeism.

9  In short, Plaintiff's activities of daily living are not inconsistent with Dr. Riabova's assessed

10  limitations.

11        Finally, the ALJ notes Dr. Riabova's opinions are apparently inconsistent with Plaintiff's

12  "relatively normal" performance on a July, 2013 mental status examination conducted by

13  Brendon Scholtz, Ph.D. AR 20, 355. However, the ALJ again fails to explain how Dr. Riabova's

14  opinion is inconsistent with this mental status examination. *See Reddick*, 157 F.3d at 725 (*citing*

15  *Embrey*, 849 F.2d at 421-22). Notably, Dr. Scholtz's mental status examination contained many

16  of the same findings Dr. Riabova made in her mental status examinations, including memory

17  impairments and poor insight into Plaintiff's condition. *Compare* AR 333 *with* AR 355. Thus,

18  the ALJ failed to provide a specific and legitimate reason, supported by substantial evidence, for

19  discounting Dr. Riabova's opinions.[3]

20

21

22      [3] Defendant also cites to several purported inconsistencies with the medical evidence which she contends supports the ALJ's decision. Dkt. 12, pp. 2-3 (noting the records reflect Plaintiff improved on medication and had obtained jobs). However, the ALJ failed to offer these

23  reasons as a basis for discounting Dr. Riabova's opinions, and this Court is constrained to review the actual reasoning and findings of the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

24  1219, 1222 (9th Cir. 2009). In any event, Defendant's proposed inconsistencies are unsupported

1        Further, this error is not harmless. The ALJ's RFC finding fails to account for all of Dr.

2  Riabova's opined limitations, such as Plaintiff's limitations in working with supervisors and

3  Plaintiff's limitations in maintaining a schedule. Because the RFC finding fails to account for

4  these limitations, the ALJ's error is not "inconsequential to the ultimate nondisability

5  determination," and is harmful error requiring remand. *See Molina v. Astrue*, 674 F.3d 1104,

6  1117 (9th Cir. 2012).

7                   2. *Other Medical Opinion Evidence.*

8        Plaintiff argues the ALJ erred by discounting one aspect of Dr. Scholtz's opinion.

9  Specifically, Plaintiff argues the ALJ failed to offer a specific and legitimate reason to discount

10  Dr. Scholtz's opinion Plaintiff would require job coaching and sheltering. AR 20, 356. However,

11  the ALJ correctly noted Dr. Scholtz failed to support this aspect of his opinion with any

12  explanation or reference to his examination findings. AR 356. An ALJ may properly discount an

13  opinion which is brief, conclusory, and unsupported by evidence in the record. *See Batson v.*

14  *Commr', Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Further, the ALJ correctly notes

15  Dr. Scholtz opined Plaintiff's impairments would likely improve significantly or remit within 90

16  days. AR 356.  As disability is defined as the inability to work due to limitations "which can be

17  expected to result in death or which has lasted or can be expected to last for a continuous period

18  of not less than twelve months," the ALJ could properly discount Dr. Scholtz' opinion for this

19  reason. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20

21  ———————————————————————————————————————

22  by substantial evidence. For example, Defendant argues Dr. Riabova's opinion Plaintiff was not
capable of employment were contradicted by two treatment notes reflecting she was working at

23  the time of two treatment sessions. AR 330, 332. However, the record as a whole—including the
Social Security Administration's own wage history reports—reflect this period of time

24  constituted no more than *de minimis* work, which lasted, at most, two weeks. *See* AR 170-73.

1    Plaintiff also argues the ALJ erred by giving too much weight to the opinions of State

2  Agency Medical Consultants Richard Borton, Ph.D., and Carla van Dam, Ph.D., as well as

3  giving too much weight to the balance of Dr. Scholtz's opinion. However, an ALJ is only

4  required to offer specific and legitimate reasons for *discounting* a medical opinion. *See Lester*, 81

5  F.3d at 831. Moreover, the ALJ has sole responsibility to resolve ambiguities and determine the

6  credibility of medical evidence. *See Reddick*, 157 F.3d at 722. *See also Orteza v. Shalala*, 50

7  F.3d 748, 750 (9th Cir. 1995) (drawing a distinction between an ALJ *discounting* a medical

8  opinion, and an ALJ *interpreting* a medical opinion). Provided an ALJ's reasoning is supported

9  by substantial evidence, the Court is not permitted to reweigh the evidence.

10    An examining physician's opinion constitutes substantial evidence "because it rests on

11  his [or her] own independent examination . . . ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

12  Cir. 2001). Further, a non-examining medical consultant's opinion constitutes substantial

13  evidence where it is consistent with other evidence in the record. *Id.* at 1149. Here, the ALJ

14  noted the balance of Dr. Scholtz's opinions were supported by his examination findings, and the

15  ALJ concluded Dr. van Dam and Dr. Borton's opinions were consistent with Plaintiff's

16  presentation on multiple treatment visits and examinations. AR 20. This was sufficient to support

17  the ALJ's interpretation of Dr. Borton, Dr. van Dam, and Dr. Scholtz's opinions, and, assuming

18  the ALJ properly discounted the opinions of Plaintiff's treating psychiatrist, would be proper

19  reasons for the ALJ to give these opinions significant weight.

20    However, as discussed above, the ALJ did *not* properly discount Dr. Riabova's opinion.

21  Thus, on remand, the ALJ should reevaluate the medical opinion testimony.

22

23

24

II.   <u>Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence in the Record.</u>

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ need not cite the specific record, nor "clearly link his determination to those reasons," as long as "arguably germane reasons" for dismissing the testimony are noted and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ offered arguably germane reasons for discounting the lay witness testimony of Plaintiff's two former teachers, Marcy Stading and Shawn Kepp, and Plaintiff's mother, Michelle Chase. For example, the ALJ properly noted that, while Ms. Stading and Mr. Kepp testified Plaintiff had very serious problems interacting and relating with others (AR 226, 234, 250), Plaintiff's activities of daily living included hanging out with friends. *See* AR 259-60. Further, the ALJ could properly rely on inconsistencies between Plaintiff's treating notes and Ms. Chase's statements. *See Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). However, as the ALJ's error in evaluating Dr. Riabova's testimony requires remand for further proceedings, the ALJ should reevaluate the lay witness testimony on remand.

## CONCLUSION

Based on the above stated reasons and the relevant record, the Court finds the ALJ committed harmful error by failing to properly evaluate the medical opinion evidence. Therefore, the Court orders this matter be reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for a *de novo* hearing. On remand, the ALJ should re-evaluate medical opinion evidence, re-evaluate the lay witness testimony, reassess Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation, as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 7th day of March, 2017.

David W. Christel
United States Magistrate Judge